### PROSECUTION FOR FAILURE TO PROVIDE FOR CHILD.

Court of Insolvency of Hamilton County.

### Ex Parte Kenneth Wyant, Alias Clay Van Kerner.

Decided, March, 1909.

*Parent and Child—Prosecution for Non-Support—Jurisdiction of Justice of the Peace—Lack of, May be Shown by Evidence Aliunde the Record—Constitutional Law—Venue can not be Arbitrarily Fixed Outside the County in which the Offense was Committed—99 O. L., 228.*

1. Where a justice of the peace has committed to jail a parent charged with non-support of his child to await action of grand jury, on habeas corpus by such parent evidence *de hors* the record may be heard to show want of jurisdiction in said justice to make such order.

2. Section 2 of an act of the General Assembly entitled "an act to compel parents to maintain their children," passed and approved April 28, 1908 (99 O. L., 228), arbitrarily enacting that "the offense shall be held to have been committed in any county of this state in which said child * * * may be at the time such complaint is made" is repugnant to Article I, Section 10 of the Constitution and void.

Warner, J.

The petitioner was committed by James S. Myers, a justice of the peace, to the custody of the sheriff of Hamilton county, and, in default of bail, was lodged in jail upon a charge preferred by his wife, Irene Wyant, "for unlawfully neglecting and refusing to provide with a necessary and proper home, care, food and clothing, one Hazel Wyant, a minor child under the age of sixteen years, he the said Kenneth Wyant, *alias* Clay Van Kerner, being then and there the father of said minor child,"

The petitioner now seeks to be discharged from custody under this writ. He alleges that he is "illegally restrained and deprived of his liberty without any legal authority by" said sheriff. The return of the sheriff certifies that the petitioner was taken into custody and is detained "by virtue of a mittimus issued by "said justice of the peace," and "a true copy" thereof is exhibited showing the charge aforesaid, the default of bail, and the usual command to receive the petitioner into custody, to remain there until "discharged by due course of law." The mittimus on its face appears to be regular and legal in form.

This prosecution was commenced under the provisions of an act of the Legislature entitled "an act to compel parents to maintain their children," passed and approved April 28th, 1908 (99 O. L., 228). The petitioner claims in support of the allegations of his petition herein, that at the time said act was passed and approved, and for a long time prior thereto, and at all times since, he was a non-resident of this state and not amenable to its laws or subject to the jurisdiction of its courts, in the matters charged against him, and offered himself as a witness to give evidence of such non-residence. The prosecuting attorney on behalf of the sheriff objected to such, or any testimony, and contended that in habeas corpus the petitioner must stand or fall upon the record in the case, and that any evidence *de hors* that record was entirely immaterial and incompetent. The petitioner was permitted to testify and the court reserved its decision as to the right to so testify and the competency of such testimony for further consideration.

Section 5729, Revised Statutes, provides:

"If it appear that the person alleged to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate   *   *   *   and that the court or magistrate had jurisdiction to issue the process   *   *   *   or make the order, the writ shall not be allowed."

The provisions of this section limit the inquiry in habeas corpus cases like the one at bar to the question of jurisdiction. Jurisdiction has been defined to be "power to hear and determine" a cause, and such authority must extend both to the

subject-matter and the person.  As sometimes stated there must be jurisdiction of the "person, place and subject-matter" (*Church on Habeas Corpus*, Section 368), and if either is wanting the imprisonment is without "authority of law" and void. Clearly if the law under which a party is committed is unconstitutional, the entire proceeding is a nullity, and a prisoner may be discharged on habeas corpus.  Under the provisions of Section 5729, *supra*, jurisdiction in the magistrate "to issue the process or make the order" must necessarily exist, and want of jurisdiction of either the subject-matter, or the person, would fairly seem to make any action a nullity.

When the want of jurisdiction appears on the face of the record the petitioner must of course be discharged; but may the petitioner show by evidence *aliunde* the record that the magistrate was without jurisdiction to commit?  The general rule, established by Federal authority, and prevailing in the courts of the states, is that "jurisdiction is *always an open question,* and may be inquired into by any court or judge competent to issue the writ" (*Church on Habeas Corpus*, Sections 233 and 236).  If an *"open question"* then any essential element of jurisdiction must be subject to investigation; and when the proceedings show, on their face, necessary jurisdictional facts, as is usually the case, it would seem to be proper to controvert such showing by evidence to establish the falsity thereof, for surely a prisoner should not be detained in custody on proceedings that are based upon false premises as to essential jurisdictional matters. .

In this state it was held in *Re Wm. J. George et al,* 5 C. C., 207, that "in a proceeding in habeas corpus evidence may be given to prove the want of jurisdiction in the court to make the order" complained of.  It is contended, however, on behalf of the sheriff that the George case is practically overruled by the Supreme Court in *Burns* v. *Tarbox,* 76 O. S., 520.  It appears in the George case that a suit had been brought in the Probate Court of Putnam county by Richard Gilmore against the Findlay, Ft. Wayne & Western R. R. Co., under Section 6448, Revised Statutes, to recover compensation for land unlawfully taken without payment by said company.  After judgment against

the company and execution returned unsatisfied, an injunction was issued by said probate court restraining the company from using and occupying the premises. George and others, employes of the defendant company, violated the order of injunction, and were fined for contempt of court, and committed to jail until such fines and costs should be paid, whereupon a writ of habeas corpus was sued out in the proper circuit. On the hearing evidence was admitted *de hors* the record to show want of jurisdiction in the probate court to issue the restraining order. It will be observed that here was a *final order committing the petitioners to jail,* from which they sought relief by habeas corpus.

In *Burns* v. *Tarbox* a warrant had been issued by the mayor of Xenia, for the arrest on a charge of non-support of his children, of Burns who claimed to reside in Cincinnati. He was arrested in Cincinnati and sued out a writ of habeas corpus in the common pleas court. On the hearing Burns offered evidence to show various defenses to the prosecution in Greene county, one of which was that he was a resident of Hamilton county. The court refused to hear or consider the evidence and remanded him to the custody of the sheriff of Greene county, and when the habeas corpus case reached the Supreme Court it was there

"*Held:* The evidence offered was not competent to work the discharge of B. on habeas corpus, the same being competent and appropriate as a part of his defenses to the charge before said mayor."

In the opinion of the court, Price, J., says:

"The evidence offered and excluded would be perfectly competent on the trial of the accused before the mayor who issued the warrant, and if the facts tendered should be established, he would be entitled to an acquital of the charge as was had in *State* v. *Dangler.*"

In the Dangler case, 74 O. S., 49, the Supreme Court had held that "a prosecution * * * for non-support * * * must be instituted in the county in which the defendant resides at the time he neglects or refuses to furnish the support." It is apparent that the holding of the Supreme Court was based upon

the jurisdictional regularity, on its face, of the proceeding before the mayor, and the further fact that such proceeding *was pending,* and that the want of jurisdiction, if it existed, should be litigated, *in the first instance,* in the pending proceeding.

I conclude therefore that the George case, where relief by habeas corpus was based upon a *final order* which the court was without jurisdiction to make, was not overruled by *Burns* v. *Tarbox.* The case at bar is in its legal aspect similar to the George case. The proceeding before the justice of the peace is ended. The petitioner has been committed to jail. True he is there to await the action of the grand jury, but that fact is now immaterial. For if there is a want of jurisdiction in the justice to make the committment it is entirely void (*Church on Habeas Corpus,* Section 356).

In *Burns* v. *Tarbox, supra,* Price, J., said:

"It is argued with much force, and it is true to a certain extent, that one who has been arrested on a warrant charging him with a violation of a criminal law, may attack the jurisdiction of the court issuing the warrant, and upon establishing want of jurisdiction is entitled to a discharge."

After referring to several instances where it appears on the face of the record that a want of jurisdiction exists, Justice Price proceeded to say, "there are other instances where want of jurisdiction may be shown on habeas corpus." He may have thus referred to other instances where the face of the record would show want of jurisdiction, or to cases like the George case. I am therefore of the opinion that evidence may be received *de hors* the record to show this proceeding to be absolutely void for want of jurisdiction in the committing magistrate.

The testimony of the petitioner is undisputed, and is in substance that he is a telegraph operator; that his family home, and his own until recently, is in Covington, Kentucky; that while working at his occupation in Toledo, Ohio, he was married to the complainant in Columbus, Ohio, on August 19th, 1906; that they shortly afterwards removed from Toledo to St. Louis, Missouri, and later on went to Chicago, where in Au-

gust, 1907, he left his wife and sought employment elsewhere; that he 'went to various places but not in Ohio; that finally he secured employment in Pittsburg, Pennsylvania, which place he intended to make his residence, and that he was there from June 1st, 1908, to February 8th, 1909, at which latter date he was arrested at the instance of his wife who, it seems, had come to Cincinnati and here given birth to the child. He was brought from Pittsburg to Cincinnati without extradition.

At the conclusion of the testimony a motion was submitted to strike out the same as incompetent, which motion must be denied for reasons already stated. I think that the non-residence of the petitioner has been established by this evidence, and that such non-residence dates from the time that he and his wife removed from Toledo to St. Louis, which was some time early in 1907.

Counsel for the sheriff however contend even if the petitioner is found to be a non-resident that the state "can by statute make punishable within its borders, an act committed without its borders, the result of which takes place within its borders."

No doubt exists but that there are cases where this may be done, as where an active agency is put in operation in one state or county, and the direct effects thereof take place in another state or county, as in the case of the *American Strawboard Co.* v. *State,* 70 O. S., 140, where a stream of water was polluted in one county, and the deleterious effects thereof were conveyed into another county into which the stream flowed. But is the case at bar within the proper application of this principle? I think not. The petitioner at best has only neglected to support his child, which the mother, not he, brought into this state from Illinois. His acts are purely passive in the matter of support. No case has been cited that extends this principle to the case at bar, and I have not found any. But Section 2 of the act aforesaid permits this prosecution in any county where the child "may be" at the time complaint is made. If this is a valid enactment then the justice had jurisdiction and this writ must be denied.

It is urged that said act of the General Assembly is unconstitutional by reason of the provisions of Section 2 thereof. Said Section 2 is as follows:

"If the offense charged is abandonment or neglect or refusal to provide such child or children, or pregnant woman, with the necessary and proper home, care, food and clothing, the offense shall be held to have been committed in any county of this state in which said child or children or pregnant woman may be at the time such complaint is made."

Article I, Section 10, of the Constitution declares that an accused person shall be entitled to "a speedy public trial by an impartial jury of the county or district in which the offense is *alleged* to have been committed." Section 7263, Revised Statutes, enforces, and interprets correctly, this provision by declaring that "all criminal cases shall be tried in the county where the offense was committed," but provides for a change of venue to secure a fair and inpartial trial to the accused (*State* v. *Dangler; supra*). Under this provision of the Constitution it seems too clear for argument that the General Assembly has no power to arbitrarily fix the venue in any other county than that in which the offense is actually committed. As Section 2 ignores and is repugnant to this constitutional provision it is null and void.

I am of the opinion however that Section 2 is an independent provision of the act and that its constitutional infirmity does not invalidate the remainder of the act, upon familiar and well settled principles of construction.

The petitioner must be discharged.

On Rehearing as to the Constitutionality of Section 2.

I think after full consideration that said Section 2 is in conflict with the provision of the Constitution before referred to. Under the common law the prosecution must be had in the county where the crime was committed. The Constitution of 1802 enforced the common law in this particular. The present Constitution requires the prosecution to be where "the offense is *alleged* to have been committed," adding the word "alleged" as quoted. I think however that the use of this word did not so modify the constitutional restriction as to permit the General

Assembly to arbitrarily fix the venue for prosecution in a county other than that where the crime is committed.

In Illinois where the constitutional provision is identical with that of this state, a statute which provided that "if it is doubtful in which of several counties the cause of death was administered or inflicted the accused may be tried in either county" was held constitutional in a case where an express messenger on a railroad train was seen alive at a station in one county, and was found killed in his car at the next station in an adjoining county, where the indictment was found. *Walt* v. *The People,* 126 Ill., 9.

Doubtless in this state a statute like that in Illinois would be constitutional. But Section 2 aforesaid is a much more arbitrary provision, not based upon any substantial reason, and liable to great abuse. There can be no doubt where the crime of neglect and refusal to support a child is committed. The acts are those of the father, are strictly personal, and fully performed where he is, without regard to the result to the child. The act of "neglect and refusal" constitute the crime, not the effect upon the child. The terms of the statute defining the crime make this clear. No sufficient reason exists why he should not be prosecuted in the county of his residence where his ability, or lack of ability, to support is susceptible of ready proof, and where I think the Constitution guarantees the prosecution shall be had.